UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:14-CV-425-H

PINNACLE SURETY SERVICES, INC.                                         PLAINTIFF

v.

TODD P. LOEHNERT, *et al.*                                              DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

In April 2013, Defendants John Ayres and Todd Loehnert left their positions at Wells Fargo for leadership roles at Pinnacle Surety Services ("Pinnacle").  Wells Fargo sued Ayres, Loehnert, and Pinnacle, claiming that Ayres and Loehnert breached their employment agreements and that Pinnacle tortiously interfered with those agreements.  Two law firms—Manion Stigger, LLP and Cooper & Elliot, LLC—represented all three defendants in that matter and ultimately negotiated a settlement.  In May 2014, Ayres and Loehnert left Pinnacle and formed their own allegedly competing entity, L.A. Surety Solutions LLC.  Pinnacle then sued Ayres and Loehnert, alleging that they violated their employment agreements with Pinnacle.  Ayres and Loehnert also asserted various counterclaims.  Now, Manion Stigger and Cooper & Elliot represent Ayres and Loehnert against Pinnacle, their former client.  Pinnacle has moved to disqualify both firms, arguing a conflict of interest precludes them from serving as counsel in this matter.

This case presents difficult questions amid some acrimony.  The Court has attempted to accurately assess the events and their significance.  Both sides did an excellent job briefing the issues.  To that end, the Court engaged in a lengthy discussion with the parties concerning the pending motions.  The Court bases its ultimate conclusion upon the discernable hard facts.

I.

Rex Elliot (of Cooper & Elliot, LLC) and Bruce Stigger (of Manion Stigger, LLP) have represented Todd Loehnert for more than two decades, but the chain of events leading to this disqualification motion began just two years ago.  On April 12, 2013, Loehnert and Ayres quit Wells Fargo to work for Pinnacle.  A day later, they signed the Employment Agreement with Pinnacle.  It provided that Loehnert and Ayres would work for Pinnacle for a minimum of three years, beginning on April 13, 2013.  If both left early, each would be required to pay Pinnacle $125,000 in liquidated damages (for a total of $250,000).  This section of the contract explains the basis for the provision:

> Executives recognize that Pinnacle is expending significant resources on establishing the Kentucky Office, and that those resources are being expended based on Executive's [sic] promises and representation with regard to their expertise in the industry and their devotion to Pinnacle's business.  Executives further recognizes [sic] that Pinnacle will only receive appropriate return on its investment in the Kentucky office if the office remains open and profitable for a period of time, and that Executive(s') termination of employment from Pinnacle will cause Pinnacle to incur injury and damage, the actual amount of which would be extremely difficult to determine. . . .

Pinnacle claims the parties anticipated litigation with Wells Fargo and that this was one of the significant factors the parties considered in reaching the $250,000 liquidated damages figure. Loehnert and Ayres, meanwhile, claim the figure was totally unrelated to the Wells Fargo matter.

Attorneys from Cooper & Elliot and Manion Stigger represented Loehnert and Ayres in negotiating this employment agreement and its subsequent reformation[1] in December 2013; the law firms did not represent Pinnacle in either negotiation.  Nevertheless, the purpose of the liquidated damage provision would reemerge as a potential issue in subsequent litigation.

---

[1] The parties agreed to this reformation after someone discovered a printing error in the April 2013 Employment Agreement.  The Court refers to these two documents collectively as the "Employment Agreement."

On April 25, 2013, Wells Fargo sued Loehnert, Ayres, and Pinnacle in Jefferson County Circuit Court, alleging six counts: (1) breach of contract (against Ayres and Loehnert); (2) breach of fiduciary duty of loyalty (against Ayres and Loehnert); (3) breach of covenant of good faith and fair dealing (against Ayres and Loehnert); (4) violation of the Kentucky trade secret statute (against all defendants); (5) unfair competition (against all defendants); and (6) tortious interference with contract (against all defendants).  According to Loehnert and Ayres, shortly after Wells Fargo filed this complaint, Pinnacle proposed that Cooper & Elliot and Manion Stigger also represent Pinnacle in order to save money "and because everyone knew Mr. Loehnert and Mr. Ayres were the primary defendants in the case."  DN 17 at 5.  Though neither had ever represented Pinnacle, both Manion Stigger and Cooper & Elliot agreed and represented Loehnert, Ayres, and Pinnacle in the litigation.

Loehnert and Ayres claim that during this representation Cooper & Elliot had only a few telephone conversations with Pinnacle's owner; used Loehnert and Ayres as the primary points of contact in the litigation; and only provided updates on the status of the litigation without sharing any confidential information.[2]  Moreover, they assert that no one from Manion Stigger or Cooper & Elliot has ever personally met the owners of Pinnacle.  The lawyers nevertheless submitted an answer and alleged multiple counterclaims on behalf of all three.  Pinnacle paid Cooper & Elliot a total of $32,650 after this matter settled.[3]

Attorneys from Manion Stigger and Cooper & Elliot settled this lawsuit with Wells Fargo on June 4, 2013, and the suit was dismissed three days later.  The terms of this settlement are confidential.  The parties have nevertheless disclosed that, as a part of this settlement, Loehnert

---

[2] Pinnacle disputes this point and claims that its principals "had numerous confidential and privileged communications" with the lawyers regarding case strategy and facts.  DN 14-1 at 6.
[3] Loehnert and Ayres admit that Pinnacle made this payment but claim it was an advance to Loehnert and Ayres, who subsequently reimbursed Pinnacle for those fees.

and Ayres agreed to pay Wells Fargo $100,000 immediately and another $100,000 a year later; they made the final payment to Wells Fargo on June 4, 2014.

On June 5, 2013, Pinnacle wired $100,000 to the account of Manion Stigger, who was acting as counsel to Ayres, Loehnert, and Pinnacle.  Pinnacle describes this payment as an advance on commissions to assist Ayres and Loehnert in paying their settlement obligations to Wells Fargo.  Pinnacle later signed a promissory note requiring it to pay $100,000 to Todd Loehnert and Brian Ayres "with the interest at the simple interest rate of 4% per annum from June 4th, 2013, until paid . . . ."  It further provided: "The whole sum of principal and interest shall become immediately due and payable on June 4th, 2014."  The parties dispute liability under the promissory note and for the initial $100,000 payment, but the arguments on both sides are not really clear and this issue is not currently before this Court.[4]  But even under Loehnert and Ayres's version of the facts, the payment and promissory note stem from the first $100,000 owed under the Wells Fargo Settlement.[5]

On May 23, 2014, Rex Elliot (acting as counsel to Loehnert and Ayres) sent a demand letter to Pinnacle, threatening a lawsuit seeking "any damages . . . due to the inability make [sic] the second installment payment on June 1st in accordance with the Wells Fargo Settlement Agreement, including Wells Fargo's legal fees to enforce the obligation and the 10% interest obligation set forth in the Note."  DN 14-4 at 1.  Loehnert and Ayres now note that they eventually paid this out of their own savings and chose not to pursue this remedy.

---

[4] Loehnert and Ayres contend that Pinnacle failed to pay amounts owed under the promissory note and sued Pinnacle in a matter that has been consolidated with this one.  Conversely, Pinnacle argues it paid its obligation under the promissory note and that "both the loan and note are unquestionably connected to the Wells Fargo matter."
[5] A counterclaim asserted by Loehnert and Ayres notes that Pinnacle executed the promissory note "recognizing the extraordinary value Plaintiff could receive by pulling [Loehnert and Ayres] from Wells Fargo."  DN 7 at 6.  The counterclaim also references the Wells Fargo settlement in another context: "On March 15, 2014, Pinnacle disbursed the sum of $86,999.40, as directed by [Loehnert and Ayres], and withheld payment of the remaining $50,000, as directed by [Loehnert and Ayres] for a June 4, 2014 payment the parties previously agreed to make to Wells Fargo in order to settle a 2013 lawsuit involving Wells Fargo, Pinnacle, and the individual defendants."  DN 7 at 7.

On May 30, 2014, Loehnert and Ayres resigned from Pinnacle and two days later started doing business as LA Surety Solutions LLC.[6]  The parties dispute whether Loehnert and Ayres's early resignation was a breach of the Employment Agreement.  Loehnert and Ayres claim they did not breach because Pinnacle failed to pay amounts owed under the Employment Agreement and the promissory note (and have sued Pinnacle to recover these amounts).  Pinnacle claims Loehnert and Ayres breached the Employment Agreements and are therefore required to pay $125,000 each in liquidated damages (and has sued Loehnert and Ayres to recover this amount).  Attorneys from Manion Stigger LLP and Cooper & Elliot, LLC currently represent Loehnert and Ayers against their former client.

## II.

Disqualification "is a drastic measure which courts should be hesitant to impose except when absolutely necessary." *Zurich Ins. Co. v. Knotts*, 52 S.W.3d 555, 560 (Ky. 2001).  It "separates a party from the counsel of its choice with immediate and measurable effect." *Id.* The Sixth Circuit has repeatedly held that disqualification is appropriate if "(1) a past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) the subject matter of those relationships was/is substantially related; and (3) the attorney acquired confidential information from the party seeking confidential information." *Bowers v. Ophthalmology Group*, 733 F.3d 647, 651 (6th Cir. 2013) (quoting *Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*, 900 F.2d 882, 889 (6th Cir. 1990)).  This standard is easy to state but difficult to apply in circumstances such as these.  In application, the third element blends into the second.  This is because the "former client is not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk that the

---

[6] Loehnert and Ayres actually formed this entity on April 25, 2014.  Bruce Stigger (of Manion Stigger) signed the Articles of Organization as L.A. Surety's registered agent.

lawyer has confidential information." *Id.* at 651-52 (quoting Ky. S. Ct. R. 3.130(1.9) (cmt. 3)); *id.* at 651 n.2 ("For this reason, our prior single-judge order was wrong to state that 'it [has not] been shown that any confidential information was disclosed that would pose a conflict.'").

Still, an attorney's duty to protect a former client's confidential information is central to determining whether two matters are "substantially related." In *Bowers*, the Sixth Circuit squarely addressed this issue. There, the court applied Rule 1.9(a) of the Kentucky Rules of Professional Conduct to a disqualification motion and said the rule "is essentially the same" as the Sixth Circuit's tripartite test. *Id.* at 651. This Kentucky Rule provides: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in . . . a substantially related matter in which that person's interests are materially adverse to the interests of the former client." Ky. S. Ct. R. 3.130(1.9)(a); *see also* MODEL RULES OF PROF'L CONDUCT R. 1.9(a) (2011) (using identical language).

In *Bowers*, the court relied heavily on the comments to this rule and a federal district court opinion in Kansas to define "substantially related." *Bowers*, 733 F.3d at 651. In pertinent part, the comments to Rule 1.9 state that "[m]atters are 'substantially related' . . . if they involve the same transaction or legal dispute or if there is otherwise a substantial risk that confidential factual information *as would normally have been obtained* in the prior representation would materially advance the client's position in the subsequent matter." Ky. S. Ct. R. 3.130(1.9) (cmt. 3) (emphasis added). The court also relied on "a well-regarded opinion" from a federal district court in Kansas:

> In determining whether a substantial relationship exists, the court evaluates the similarities between the factual bases of the two representations. A commonality of legal claims or issues is not required. At a functional level, the inquiry is whether the attorneys were trying to acquire information vitally related to the subject matter of the pending litigation. To accomplish this inquiry, the court must be able to reconstruct the attorney's representation of the former client, to

6

infer what confidential information could have been imparted in that representation, and to decide whether that information has any relevance to the attorney's representation of the current client.  What confidential information could have been imparted involves considering what information and facts ought to have been or would typically be disclosed in such a relationship.  Consequently, the representations are substantially related if they involve the same client and the matters or transactions in question are *relevantly interconnected* or *reveal the client's pattern of conduct*.

*Bowers*, 733 F.3d at 652 (quoting *Koch v. Koch Indus.*, 798 F. Supp. 1525, 1536 (D. Kan. 1992)) (emphasis added).  In other words, this Court must determine what confidential information might normally have been learned, not what information actually was learned.

As the *Bowers* court explained, in analyzing this motion to disqualify counsel, "the court must look to the general type of information that the potentially conflicted lawyer would have been exposed to in a normal or typical representation of the type that occurred with the now-adverse client." *Id.* (citation omitted).  "Admittedly, this approach has its difficulties, most notably that reconstructing a representation using generalities is less exact than examining what actually happened.  Nonetheless, this method presents a necessary alternative to engaging with the specific—perhaps confidential—facts surrounding a potentially conflicted attorney's prior representation of a now-adverse client." *Id.*

### III.

 The Court now applies this approach to the present case.  The parties do not dispute the first part of the test: attorneys from Manion Stigger and Cooper & Elliot represented Pinnacle in the Wells Fargo dispute, and Pinnacle is now directly adverse to their current clients, Loehnert and Ayres.  The second part of the test is the issue here: If the Court determines these matters are "substantially related," the attorneys have a conflict and must be disqualified.  As the Sixth Circuit described in *Bowers*, the first step in determining substantial similarity is to reconstruct the prior representation of Pinnacle in the Wells Fargo matter.  From this, the Court must

determine whether there is a substantial risk that confidential information as would normally or typically have been obtained in the attorneys' prior representation of Pinnacle would materially advance the positions of Loehnert and Ayres in the present case. *See id.* at 653. Counsel must be disqualified if the Court determines the matters (1) are relevantly interconnected or (2) reveal the Pinnacle's pattern of conduct. *See id.* at 652 (quoting *Koch*, 798 F. Supp. at 1536).

A.

To track the *Bowers* analysis, the Court first reconstructs a "normal or typical representation" of the type in the Wells Fargo matter. *See Bowers*, 733 F.3d at 653. In that case, Loehnert and Ayers left their jobs at Wells Fargo to work at Pinnacle, so Wells Fargo sued Loehnert, Ayres, and Pinnacle, and these three defendants asserted several counterclaims. Wells Fargo asserted six causes of action in the suit, including claims against only Loehnert and Ayres (breach of contract, breach of fiduciary duty of loyalty, and breach of covenant of good faith and fair dealing), and claims against all three defendants (violation of Kentucky trade secret statute, unfair competition, and tortious interference with contract). Ultimately, the Manion Stigger and Cooper & Elliot attorneys negotiated a confidential settlement on behalf of all three defendants in that case. Both sides of the current litigation—Pinnacle and Loehnert and Ayres—have access to this agreement.

In a typical representation of the kind in the Wells Fargo matter, Pinnacle's counsel would have obtained various pieces of confidential information that could be helpful in representing Loehnert and Ayres in this action. Most significantly, how much were Loehnert and Ayres worth to Pinnacle? In negotiating the Wells Fargo settlement, the attorneys would have learned whether Pinnacle was willing to pay or make advances on any amounts owed to Wells Fargo for violating their employment agreements. If Pinnacle was willing to pay, the

8

attorneys likely would have been given a maximum amount that Pinnacle could afford to spend on the new employees. Moreover, the attorneys would learn Pinnacle's litigation and negotiation strategies in cases involving employment contracts, trade secrets, and fiduciary duties. This is information that, but for their representation of Pinnacle in the Wells Fargo matter, these attorneys could not have otherwise obtained. If obtained, it would certainly be useful to Loehnert and Ayres in litigation and potential settlement discussions in the present case. Under *Bowers*, whether the attorneys actually learned the information is not directly relevant.

B.

After determining the type of confidential information that would be shared in the "normal" representation of the type in the Wells Fargo matter, the Court must examine whether the matters are "relevantly interconnected" or reveal Pinnacle's "pattern of conduct." *Bowers*, 733 F.3d at 652 (quoting *Koch*, 798 F. Supp. at 1536). Though either would be grounds for the Court to find substantial similarity, the Court finds that both apply here.

Though the Wells Fargo matter and the current lawsuit involve different employment agreements, fiduciary duties, and trade secrets, the matters are "relevantly interconnected" for two reasons. First, the promissory note and loan from Pinnacle to Loehnert and Ayres are contentious in the present litigation, and both stem from the Wells Fargo litigation. In the Wells Fargo matter, the parties agreed to a confidential settlement agreement. The parties have disclosed that this agreement required them to make two $100,000 payments to Wells Fargo— one in June 2013 and another in June 2014. The parties now disagree on the purpose of those payments. In one of their counterclaims against Pinnacle, Loehnert and Ayres assert that Pinnacle "has failed to pay the $100,000 owed under the Promissory Note which was due and payable on June 4, 2014." DN 7 at 9. By contrast, Pinnacle asserts that it satisfied the $100,000

9

Promissory Note and also advanced $100,000 on Loehnert and Ayres's behalf to assist them in paying their settlement obligation to Wells Fargo.  DN 20 at 10, n.10.

Second, the interpretation and enforceability of the Employment Agreement are also contentious and related to the Wells Fargo matter.  Broadly speaking, the whole basis of Wells Fargo's suit against Pinnacle was that it employed Loehnert and Ayres; and, of course, Pinnacle employed the two through the Employment Agreement.[7]  More specifically, Pinnacle points to the contentious $250,000 liquidated damages clause.  As the Court noted in Section I of this opinion, the terms of this provision state that Loehnert and Ayres understood "that Pinnacle will only receive appropriate return on its investment in the Kentucky office if the office remains open and profitable for a period of time."  When the parties entered into the Employment Agreement, everyone was aware of the Wells Fargo litigation.  Pinnacle has now taken the reasonable position that the resolution of the Wells Fargo litigation was a significant factor in determining that $250,000 would enable it to "receive appropriate return on investment."

Loehnert and Ayres dispute this claim, but the Court fails to see how they could know what Pinnacle considered—at various points in their response and surreply to this motion, Loehnert and Ayres emphasize that Pinnacle had its own separate counsel in negotiating the Employment Agreement.  What the Manion Stigger and Cooper & Elliot attorneys *could know*, however, is the value that Pinnacle placed on these two employees from their prior representation in the Wells Fargo matter.  And this information could be critical in litigating and negotiating the disputes over the promissory note and the Employment Agreement.

---

[7] Pinnacle seems to argue that the Cooper & Elliot and Manion Stigger attorneys should be disqualified in this matter because they had a concurrent conflict in negotiating Loehnert and Ayres's employment agreement with Pinnacle while the Wells Fargo matter was still pending.  This argument fails because, even if the attorneys had a concurrent conflict in that negotiation, that was a separate matter from the current litigation and would not be grounds for disqualification now.  Pinnacle could have raised its objection to its counsel's participation in the negotiations at that time.

The Court well understands that the *Bowers* analysis may seem unfair to the attorneys. They would prefer to require Pinnacle to prove that confidential information was actually communicated.  However, the proper analysis does not provide for such a showing.  And, because the Court finds the matters were "relevantly interconnected," the matters were "substantially related" and the Manion Stigger and Cooper & Elliot attorneys must be disqualified.

IV.

There is another independent basis for disqualification: the matters reveal Pinnacle's "pattern of conduct."  There are many parallels between the Wells Fargo matter and this one.  In the Wells Fargo matter, Loehnert and Ayres were sued in April 2013 by their former employer (Wells Fargo) when they quit to work somewhere else (Pinnacle) and allegedly broke an employment agreement (with Wells Fargo).  They also asserted counterclaims before settling in June 2013.  Here, Loehnert and Ayres were sued in June 2013 by their former employer (Pinnacle) when they quit to work under their own entity (L.A. Surety) and allegedly broke an employment agreement (with Pinnacle).  They have also asserted counterclaims.  In a "normal or typical" representation like counsels' representation of Pinnacle in the Wells Fargo matter, the attorneys would have learned the value Pinnacle placed on Loehnert and Ayres through Pinnacle's litigation strategies, negotiation tactics, ability and willingness to pay to settle claims, and tolerance for risk in a case with many factual similarities to the present litigation.

Though "[i]nformation that has been disclosed to the public or to other parties adverse to the former client ordinarily will not be disqualifying," Ky. S. Ct. R. 3.130(1.9) (cmt. 3), it is not hard to imagine how confidential information obtained in that former representation could have a substantial impact in this case.  And because a lawsuit of this kind could create a conflict

between the employees and their new employer, a typical representation would have included

confidential conversations between the employer and its attorneys concerning the value the

employer placed on its new employees if the negotiations with Wells Fargo were to turn sour and

Pinnacle had to sacrifice the two to serve its own interest.  This information could have a

substantial effect on the potential damages in this case—particularly in a possible negotiation.

Because the law firms' prior representation of Pinnacle would reveal a "pattern of conduct" in a

typical case, the matters are "substantially related" and the attorneys must be disqualified.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Pinnacle's motion to disqualify the law firms of Manion

Stigger LLP and Cooper & Elliot, LLC is GRANTED and the law firms are DISQUALIFIED.

IT IS FURTHER ORDERED that all discovery is STAYED while Loehnert and Ayres

obtain new counsel.

cc:      Counsel of Record